IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HEATHER FINSTUEN, et al.,                    )
                                             )
                        Plaintiffs,          )
                                             )
            vs.                              )        No. CIV-04-1152-C
                                             )
DREW EDMONDSON, in his                       )
official capacity as Attorney General        )
of Oklahoma; BRAD HENRY, in                  )
his official capacity as Governor of         )
Oklahoma; and DR. MIKE CRUTCHER,             )
in his official capacity as Commissioner     )
of Health of Oklahoma,                       )
                                             )
                        Defendants.          )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Plaintiffs' Motion for Summary Judgment.  Defendants filed a

Response and a Cross-Motion for Summary Judgment.  Plaintiffs filed a response to

Defendants' motion and these matters are now at issue.[1]

Plaintiffs brought the present action challenging the validity of a 2004 amendment

(Amendment) to 10 Okla. Stat. § 7502-1.4(A), a part of Oklahoma's adoption code.  That

statute states:

> The courts of this state shall recognize a decree, judgment, or final
> order creating the relationship of parent and child by adoption, issued by a
> court or other governmental authority with appropriate jurisdiction in a foreign
> country or in another state or territory of the United States. The rights and
> obligations of the parties as to matters within the jurisdiction of this state shall

---

[1]  The parties have agreed that to the extent the Court cannot resolve the issues via the
summary judgment motions, the Court may issue findings of fact and conclusions of law pursuant
to Fed. R. Civ. P. 52.

be determined as though the decree, judgment, or final order were issued by a court of this state. *Except that, this state, any of its agencies, or any court of this state shall not recognize an adoption by more than one individual of the same sex from any other state or foreign jurisdiction.*

The Amendment is the italicized language. Plaintiffs are three sets of same-sex couples and their children. The adult Plaintiffs have adopted a child or children in another state and seek recognition of that adoption in Oklahoma. Plaintiffs brought the present action arguing the Amendment to § 7502-1.4(A) violates the Full Faith and Credit, Equal Protection, and Due Process Clauses of the United States Constitution and impairs their constitutionally-protected right to travel. Defendants argue that Plaintiffs lack standing to challenge the Amendment and even if they establish standing, the Amendment does not violate the Constitution.

## I. FACTS[2]

For ease of addressing the issues, the Court will divide the Plaintiffs into family-based groups.

## A. The Hampel/Swaya Family

In August of 2002, Plaintiffs Gregory Hampel and Edmund Swaya, who reside in Washington, adopted V.[3] in the Superior Court of King County, Washington. As part of the adoption proceedings, Hampel and Swaya agreed to bring V. back to Oklahoma to visit her birth family. Because V. was born in Oklahoma, Hampel and Swaya sought to obtain a

---

[2] Except where indicated otherwise, the following facts are undisputed.

[3] Pursuant to LCvR 5.3(a)(2), the minor Plaintiffs will be referenced by initial.

supplementary birth certificate[4] for V., identifying both of them as V.'s parents.  In July of

2003, the Oklahoma Department of Health issued a replacement birth certificate for V.,

identifying Mr. Hampel as her only parent.  Hampel and Swaya contested this result, and

Defendant Commissioner of Health sought an opinion from the Oklahoma Attorney General.

The Attorney General issued an opinion wherein it was recognized that the Full Faith and

Credit Clause of the United States Constitution required full recognition of the out-of-state

adoption order and that the Department of Health should issue a birth certificate listing both

Mr. Hampel and Mr. Swaya as V.'s parents.  On April 6, 2004, the Oklahoma Department

of Health issued a replacement birth certificate for V. which listed Mr. Hampel and Mr.

Swaya as parents.  In response to the Attorney General's opinion in V.'s adoption, the

Amendment challenged here was enacted.

Since the enactment of the Amendment, Hampel and Swaya have not returned to

Oklahoma because they fear their status as V.'s parents will not be recognized by state

officials.  Hampel and Swaya further assert that due to the Amendment and their concerns

---

[4]  10 Okla. Stat. § 7505-6.6(B) provides:

> The State Registrar, upon receipt of a certificate of a decree of
> adoption, shall prepare a supplementary birth certificate in the new
> name of the adopted person with the names of the adoptive parents
> listed as the parents. The city and county of the place of birth, the
> hospital, and the name of the physician shall not be changed from the
> information provided on the original certificate of birth. If the
> adopted person was born in a foreign country, the State Registrar
> shall prepare a certificate of foreign birth.

about visiting Oklahoma, they have been unable to honor their agreement with V.'s birth

mother to bring V. to the state for visits with her extended family.

B.  The Doel Family

The Doels are women who now reside in Oklahoma.  E. was born on July 20, 2000,

and adopted by Lucy Doel in California on January 25, 2002.  On June 14, 2002, Jennifer

Doel adopted E. in California under that state's stepparent adoption procedure.  In 2002, the

Doels moved to Oklahoma with E. to raise her in this state.  On February 27, 2004, the

Oklahoma Department of Health issued a birth certificate for E., identifying Lucy as her only

parent.   The Doels have been unsuccessful in obtaining a birth certificate from the

Department which lists both Lucy and Jennifer as E.'s parents.

The Doels assert the Amendment has affected the manner in which they exercise their

obligations as parents of E.  As an example, the Doels recite an incident where E. had to be

transported to the emergency room by ambulance.  According to the Doels, the emergency

medical technicians and emergency room personnel initially stated only E.'s mother could

ride in the ambulance or be present in the exam room.  The medical personnel eventually

relented when it was explained that both Lucy and Jennifer were E.'s parents.

C.  The Magro/Finstuen Family

Ms. Magro and Ms. Finstuen are women who now live in Oklahoma.  On August 6,

1998, Ms. Magro gave birth to S. and K. in New Jersey.  On June 16, 2000, Ms. Finstuen

adopted S. and K. in a proceeding before the New Jersey Surrogate Court.  The adoption

proceeding preserved Ms. Magro's existing parental rights.  In July of 2000, Ms. Magro and

4

Ms. Finstuen moved to Oklahoma with S. and K.  On November 1, 2000, the New Jersey Department of Health and Senior Services issued amended birth certificates for S. and K., identifying Ms. Magro and Ms. Finstuen as their parents.

Ms. Magro and Ms. Finstuen assert the Amendment interferes with Ms. Finstuen's ability to act as parent to S. and K. on a daily basis.  Ms. Finstuen asserts she avoids signing parental permission slips for school and/or extracurricular activities.  Similarly, when K. had surgery, Ms. Finstuen avoided signing any documents related to medical care out of concern any signature might be considered invalid.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact."  Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it is essential to the proper disposition of the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary

materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324.  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  ANALYSIS

The Plaintiffs' arguments for their motion are premised on the following four theories: (1) Full Faith and Credit Clause; (2) Equal Protection; (3) Due Process; and (4) Right to Travel.  Defendants argue Plaintiffs lack standing to bring the present action and deny that any of the constitutional claims have merit.  The Court will address the standing issue first and the claims for relief in turn.

## A.  Standing

Defendants argue Plaintiffs lack standing as they have failed to demonstrate the existence of a concrete, objective, and palpable injury, either actual or threatened.  In response, Plaintiffs argue they have demonstrated that they have suffered actual or threatened injury as a result of the Amendment and that that injury may be redressed by a favorable decision on their claims.  According to Plaintiffs, the harm here is actual because the Amendment is self-executing and denies them recognition of their proper legal status.

Article III requires, as an "irreducible constitutional minimum" and threshold prerequisite to jurisdiction, that the matter before a federal court is an actual case or controversy.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  Thus, a plaintiff's standing to bring suit in federal court depends on the satisfying the following criteria:

> First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between that injury and the challenged action of the defendant–the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party.  Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury.

Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005) (citations omitted).

Here, the second and third elements are not challenged by Defendants and are clearly met.  The Court's December 7, 2004, Order determined that Defendants are the persons charged with enforcement of the Amendment, thus satisfying the second element.  As for the third, Plaintiffs seek an Order invalidating the Amendment, enjoining any further application of that law, and directing the state to issue birth certificates identifying each adult as a parent of the appropriate child.  Clearly, a favorable judgment will address the harm alleged by Plaintiffs.

The question remaining is whether the undisputed facts demonstrate Plaintiffs have suffered an "injury in fact."  Because they seek prospective relief, Plaintiffs must show more than past injury.  A showing of continuing, present adverse effects is required.  Lyons, 461

U.S. at 102.  Plaintiffs cannot show injury in fact with mere allegations of a possible future injury.  Instead, Plaintiffs must show any threatened injury is "'certainly impending'" or "'both real and immediate.'"  Nova Health, 416 F.3d at 1155 (citations omitted).  The reality of future injury and not Plaintiffs' subjective apprehensions is determinative.  Lyons, 461 U.S. at 102 n.8.

Defendants argue Plaintiffs have failed to demonstrate anything other than speculative injury.  According to Defendants, the assertions made by Plaintiffs only speak of harm that may occur at some point in the future.  Although Defendants' arguments are partially correct, as much of the harm asserted by Plaintiffs is speculative, Defendants overlook a critical part of the Amendment's effect on Plaintiffs.

As a direct result of the Amendment, Jennifer Doel has been unable to obtain a birth certificate for her children identifying her as a parent.  The undisputed facts are that Jennifer acts as E.'s parent and has been recognized by another state, California, as E.'s parent.  Moreover, E. is also a Plaintiff in this matter and as a direct result of the Amendment she is deprived of the rights that accrue to her as a result of being Jennifer's legally-recognized child.  Jennifer and E. have asserted facts demonstrating the existence of a parent-child relationship, including an adoption decree, and have expressed a desire for Oklahoma to legally recognize that relationship in the same manner that other out-of-state adoptions are recognized – issuance of a birth certificate identifying Jennifer as E.'s parent.  These Plaintiffs have undertaken the steps necessary for that legal recognition; the adoption is

recognized by other states; and it is only the Amendment that prevents that legal recognition in Oklahoma.

A similar result obtains for Ms. Finstuen and S. and K.  The undisputed facts demonstrate a parent-child relationship exists, has been recognized by New Jersey, and is legally nullified in Oklahoma only as a result of the Amendment.  Ms. Finstuen has also offered specific examples of how the Amendment interferes with her rights and obligations as a parent on a daily basis.  This interference will clearly continue as long as the Amendment remains in effect.  As was the case with E., S. and K. are also Plaintiffs.  The undisputed facts demonstrate the concrete and particularized harm the Amendment causes them by precluding legal recognition of Ms. Finstuen as their parent.  As long as the Amendment is in effect, this harm will continue.

By comparison, the Hampel/Swaya family is in a significantly different position.  Although Hampel and Swaya assert they cannot travel to Oklahoma with V. because of the Amendment, their fear is speculative.  The undisputed fact is that they have an Oklahoma birth certificate identifying both men as parents to V.  There is no suggestion V.'s Oklahoma birth certificate has been revoked or rescinded.  The plain language of the Amendment would not affect a birth certificate issued by Oklahoma, as the Amendment only targets documents issued by other states.  Further, before there would be any need for any person to see a copy of V.'s birth certificate during a visit to Oklahoma, some significant and unforeseen event would first have to take place.  Thus, the harm the Hampel family has alleged in this case hinges on possible events or potential outcomes that are purely speculative.

In short, the Doel family and the Magro/Finstuen family have identified concrete and particularized harm arising as a direct result of the Amendment.  Thus, these Plaintiffs have standing to challenge the Amendment.  On the other hand, the Hampel/Swaya family has failed to identify any actual, non-speculative harm arising from the Amendment.  Accordingly, they lack standing to challenge the Amendment.  Therefore, the Court lacks jurisdiction over the Hampel/Swaya family's claims and they will be dismissed.

B.  Full Faith and Credit

Defendants make a number of arguments for why the Plaintiffs' Full Faith and Credit Clause claim must fail.  Defendants argue that:  (1) Plaintiffs do not state a claim under the Full Faith and Credit Clause (FF&C) of the United States Constitution; (2) an adoption decree is not the type of judgment to which the FF&C Clause applies; (3) even if an adoption decree from another state is a "judgment," Oklahoma is not required to give it effect because Oklahoma is free to enact laws regulating the time, manner, and mechanism for enforcing that out-of-state judgment; (4) recognition of the adoption would permit another state to dictate Oklahoma's policy for same-sex adoptions and the FF&C Clause does not require such a result; and (5) Oklahoma is free to decide its own public policy and has done so through the Amendment.

There is no dispute that the Doels have a judgment declaring each to be the parent of E.  Likewise, there is a judgment declaring Ms. Finstuen to be a parent to S. and K.  There is no challenge to the validity of those court proceedings or any suggestion those judgments are in any way invalid.  Rather, Defendants argue an adoption decree, such as these, is not

the type of judgment to which the FF&C Clause applies.  The legal authority provided by Defendants is not decisive.  Defendants cite to <u>Jones v. Loving</u>, 1961 OK 188, 363 P.2d 512, and <u>Ronck v. Ronck</u>, 1950 OK 145, 218 P.2d 902, as supporting the proposition that adoptions are a matter of contract between the parties and not a judicial proceeding in the usual sense of the word.  Defendants' argument overstates the holding of the cases.  The phrase on which Defendants rely is:  "This court has held that the adoption of a child is essentially a matter of contract between the parties whose consent is required and is not a judicial proceeding although the sanction of a judicial officer is required for its consummation."  <u>Jones v. Loving</u>, 1961 OK 188, ¶7, 363 P.2d at 513-14.  Critical to the issue at bar is the fact that adoptions require the sanction of a judicial officer.  That "sanction" comes in the form of a judgment and that judgment is entitled to the same full faith and credit as any other judgment.  This conclusion is established by Oklahoma statute and case law.  Prior to the addition of the Amendment, 10 Okla. Stat. § 7502-1.4(A) required recognition of a foreign adoption decree without qualification.  In <u>Ex parte Moulin</u>, 1950 OK 82, ¶ 9, 217 P.2d 1029, 1031, the Oklahoma Supreme Court stated:  "The validity of the Arkansas decree is not called in question, therefore the same is entitled to full faith and credit under the Federal Constitution, Art. 4, § 1."  In fact, Defendant Edmondson relied on this statute and case in issuing the Attorney General's opinion that led to issuance of the birth certificate for the Hampel/Swaya family.  Thus, the Court finds no merit in Defendants' argument that the adoption decrees are not the type of judgment entitled to application of the FF&C Clause and the Court finds that the adoption decrees issued to the Doels and the Magro/Finstuen families

are entitled to full faith and credit.[5]  That finding, however, does not end the inquiry, as the

Court must determine the extent to which the out-of-state adoptions decrees must be given

credit.

The Supreme Court has set out the purpose for the FF&C Clause:

> The very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

Milwaukee County v. M.E. White Co., 296 U.S. 268, 276-77 (1935).  Recognizing this intent

to alter the relationships of the states, the Supreme Court has established that statutes and

judgments are treated differently under the Clause:

> The Full Faith and Credit Clause does not compel "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate."  Pacific Employers Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 501, 59 S.Ct. 629, 632, 83 L.Ed. 940 (1939); see Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818-819, 105 S.Ct. 2965, 2977-2978, 86 L.Ed.2d 628 (1985).  Regarding judgments, however, the full faith and credit obligation is exacting.  A final judgment in

---

[5]  See also Homer H. Clark, Jr., 2 The Law of Domestic Relations in the United States § 21.12 (2d ed. 1987):

> There is no reason why adoption decrees entered by courts of the various states, if based upon jurisdiction, should not be entitled to full faith and credit.  A few cases take the position, however, that adoption decrees are recognized only as a matter of comity and that if their recognition would offend some strong public policy of the forum, recognition may be denied.  Such a view with respect to the decrees of other state courts is erroneous.  These decrees should be recognized pursuant to the Full Faith and Credit Clause regardless of differences in the law of adoption and in fact some courts have done so even where the forum law would not have authorized the granting of an adoption under the circumstances.

> one State, if rendered by a court with adjudicatory authority over the subject
> matter and persons governed by the judgment, qualifies for recognition
> throughout the land.

Baker by Thomas v. General Motors Corp., 522 U.S. 222, 232-33 (1998).

Defendants argue that requiring recognition of the adoption decrees would run counter to established precedent which allows each state to dictate its own public policy. Defendants' argument is without merit. The Supreme Court has clearly stated that while "[a] court may be guided by the forum State's 'public policy' in determining the *law* applicable to a controversy," there is "no roving 'public policy exception' to the full faith and credit due *judgments*." Id. at 233 (emphasis in original and citations omitted). Thus, regardless of whether the adoption decrees of the other states are contrary to the public policy of Oklahoma, because they are judgments, not laws, they are entitled to full faith and credit.

Defendants also argue that the mechanism for enforcing a judgment is dictated by the laws of the forum state. Thus, Defendants argue, because issuing an Oklahoma birth certificate is an act within the exclusive province of Oklahoma, requiring that act to be performed cannot be predicated on the judgment of a court of a different state. Defendants' argument misapplies the standard controlling the restrictions that apply when enforcing foreign judgments. The rule set forth by the Supreme Court is as follows:

> Full faith and credit, however, does not mean that States must adopt the
> practices of other States regarding the time, manner, and mechanisms for
> enforcing judgments. Enforcement measures do not travel with the sister state
> judgment as preclusive effects do; such measures remain subject to the
> evenhanded control of forum law.

Id. at 235.  Thus, it is left to the forum state to regulate the mechanism for enforcing a judgment, e.g., what types of collection actions may be used, how a judgment must be registered or otherwise established in the forum state, and what court or other proceedings must be used to enforce the judgment.  However, those enforcement mechanisms may not interfere with the right of the party to the benefits of that judgment.  See Broderick v. Rosner, 294 U.S. 629, 643 (1935) ("[A state] may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject-matter and the parties.").  The Amendment is simply not an enforcement mechanism.[6]

Defendants next argue the adoption decrees do not have to be recognized by Oklahoma, based on the Supreme Court's statement in Baker that:  "[o]rders commanding action or inaction have been denied enforcement in a sister State when they purported to accomplish an official act within the exclusive province of that other State or interfered with litigation over which the ordering State had no authority."  Baker, 522 U.S. at 235.  Defendants argue this statement makes clear the FF&C Clause does not apply to the issuance of adoption decrees, as that is an official act within the exclusive province of the state.

Defendants' argument overlooks the plain language of the Baker opinion.  The quotation set out above is limited to permitting non-recognition of orders commanding

_____

[6] Further, the enforcement mechanisms must be applied in an "evenhanded" manner.  Here, even if the Amendment were considered an enforcement mechanism, it cannot be said to be evenhanded.

14

action.  Here, the adoption decrees do not attempt to direct any Oklahoma official to take action or direct any Oklahoma official to refrain from acting.  Rather, the decrees merely establish the legal relationships between the adult and minor Plaintiffs.  It is Oklahoma law, specifically 10 Okla. Stat. § 7502-1.4, that requires Oklahoma officials to act by issuing a birth certificate in harmony with out-of-state decrees.  Because the Amendment would impair the proper recognition of the finally adjudicated facts of the out-of-state decrees, it must be set aside as violative of the Full Faith and Credit Clause.

C.  Equal Protection

Plaintiffs argue the Amendment must be set aside as it violates the Equal Protection Clause by discriminating against children based on their parents' sexual orientation or unmarried intimate relationship and/or by discriminating against same-sex couples who adopt children.  Plaintiffs argue that the Amendment improperly impairs their legal relationships based on the parents' sexual orientation or due to the fact that both parents are of the same sex.  Plaintiffs argue the Amendment should be reviewed under strict or intermediate scrutiny but that it fails to pass muster under even the most relaxed standard of review.  Defendants argue that because there is not a fundamental right to adopt and/or that because homosexuals are not a suspect class, the Amendment is entitled to a presumption of validity.  According to Defendants, the Amendment should be reviewed under a rational basis analysis.  Thus, Defendants argue, because the Amendment is rationally related to a legitimate government interest, Plaintiffs' Equal Protection Clause claims must fail.

At the outset the Court notes that, for the most part, both parties ignore the language of the Amendment and thereby miss the issues relevant to the Equal Protection Clause analysis.   Contrary to Plaintiffs' argument, with the limited exception noted below, the Amendment does not target children because of their parents' sexual orientation, nor does it facially attack same-sex couples because of their relationships.   Also, the Amendment does not on its face discriminate against gay or lesbian individuals or their children.   Likewise, Defendants' argument that there is no constitutional right to adopt misses the point as the Plaintiff children have already been adopted.[7]   Rather, the effect of the Amendment is to refuse legal recognition of certain parent-child relationships that have been legally formed in a different state.   Specifically, the Amendment requires Oklahoma agencies and courts to refuse recognition to one of a child's parents if that child was adopted in some other state by two persons of the same sex.[8]   The Amendment, on its face, has the same impact whether the adoptive same-sex parents were homosexual or heterosexual; thus, sexual orientation is not the focus of the statute.

However, because the Amendment attempts to strip away the parental status of at least one of the adult Plaintiffs from each family unit, it violates the Equal Protection Clause and must be struck down.

_____

[7]   In this regard, this action involves an entirely different situation than that in <u>Lofton v. Sec'y of Dep't of Children & Family Servs.</u>, 358 F.3d 804 (11th Cir. 2004), which dealt with restrictions on the right to adopt.

[8]   "Except that, this state, any of its agencies, or any court of this state *shall not recognize* an adoption by more than one individual of the same sex *from any other state or foreign jurisdiction*."   10 Okla. Stat. § 7502-1.4 (A) (emphasis added).

16

**1.  Plaintiff Children**

The starting point in the analysis is to identify the scope of rights afforded to the Plaintiff children.  Even though the Plaintiff children are adopted, they occupy the same status as if they were the biological children of each of the parents.  See 10 Okla. Stat. § 7505-6.5(A):

> After the final decree of adoption is entered, the relation of parent and child and all the rights, duties, and other legal consequences of the natural relation of child and parent shall thereafter exist between the adopted child and the adoptive parents of the child and the kindred of the adoptive parents. From the date of the final decree of adoption, the child shall be entitled to inherit real and personal property from and through the adoptive parents in accordance with the statutes of descent and distribution. The adoptive parents shall be entitled to inherit real and personal property from and through the child in accordance with said statutes.

The same result obtains in the states where the adoptions took place.  See Cal. Fam. Code Ann. § 8616:  "After adoption, the adopted child and the adoptive parents shall sustain towards each other the legal relationship of parent and child and have all the rights and are subject to all the duties of that relationship." and N.J. Stat. Ann. § 9:3-50(b):

> The entry of a judgment of adoption shall establish the same relationships, rights, and responsibilities between the child and the adopting parent as if the child were born to the adopting parent in lawful wedlock. For good cause, the court may direct the entry of judgment nunc pro tunc as of the date the action was instituted. In applying the intestate laws of this State, an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock.

See also Smith v. Org. of Foster Families for Equality & Reform, 431 U.S. 816, 845, n.51 (1977) (Stewart, J., concurring in judgment) (where, during a discussion of the relationships of foster families and the rights inherent therein, the Court, citing New York law stated:

"Adoption, for example, is recognized as the legal equivalent of biological parenthood."). Thus, the Amendment's attempt to deny recognition to one parent operates to strip away certain legal rights to which the Plaintiff children became entitled upon their adoption.  For example, the Plaintiff children would not be permitted to recover for the wrongful death of the nonrecognized parent (see 12 Okla. Stat. § 1054 and OUJI-Civ2d 8.1 (setting out who may sue in a wrongful death claim and the damages that may be recovered)); maintain an action under the workers' compensation statute for the death of the nonrecognized parent (see 85 Okla. Stat. § 3.1); recover child support payments should the nonrecognized parent leave the home (see 10 Okla. Stat. § 4); or inherit from the nonrecognized parent in the same manner as if the parent were legally recognized (see 84 Okla. Stat. § 213).

In this regard, the Amendment has the same effect as statutes which affected an illegitimate child's rights.  Consequently, the Amendment may stand only if it satisfies intermediate scrutiny.  Clark v. Jeter, 486 U.S. 456, 461 (1988) ("Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy."). Under that standard of review, the Amendment must fail unless it is "substantially related to an important governmental objective."  Id.

Defendants assert the state's interest is found in the Oklahoma Adoption Code, 10 Okla. Stat. § 7501-1.2(A) which states:

> The Legislature of this state believes that every child should be raised in a secure, loving home and finds that adoption is the best way to provide a permanent family for a child whose biological parents are not able or willing

to provide for the child's care or whose parents believe the child's best interest
will be best served through adoption.

In addition, Defendants argue the Amendment was intended to halt the erosion of the

mainstream definition of the family unit, another valid state interest.  See Dkt. No. 62 Exh.

8.  Defendants argue these statements demonstrate a legitimate state purpose for the

Amendment.[9]

Initially the Court notes that where intermediate scrutiny is applied, the state has the

burden of proving "whether the proffered justification is 'exceedingly persuasive.' The

burden of justification is demanding and it rests entirely on the State."  United States v.

Virginia, 518 U.S. 515, 533 (1996) (citation omitted).  Defendants have failed to meet this

burden.  As far as the state's interest is defined by 10 Okla. Stat. § 7501-1.2, there is no

evidence that the adoptions by the adult Plaintiffs herein fail to satisfy the goal of placing the

Plaintiff children in secure, loving, and permanent homes.  The very fact that the adoptions

have occurred is evidence that a court of law has found the adoptions to be in the best

interests of the children.  (See Dkt. No. 62, Exh. 11 and Exh. 16, each noting that the

adoption was found to be in the children's best interest).  To now attempt to strip a child of

one of his or her parents seems far removed from the statute's purpose and therefore from

Defendants' asserted important government objective.

---

[9] Defendants assert the Amendment should be reviewed under a rational basis analysis and
therefore posit the purposes of the Amendment in the terms appropriate to that standard.

As for the statement of purpose, the Amendment does little if anything to promote the traditional family unit.[10]  Indeed, the Amendment has no effect on single-parent adoptions, even when the single parent is homosexual, nor does it require the adoptive parents be married or even in a stable relationship.[11]  Rather, the Amendment's sole effect is to refuse recognition of the previously determined parental rights of one of the Plaintiff parents. Defendants have not demonstrated, and the Court cannot find, any set of facts where that alteration of the family is substantially related to an important governmental objective.

Rather, much like the statutes imposing different standards on illegitimate children, the Amendment attempts to penalize the Plaintiff children for the acts of their parents.  As the Supreme Court stated in Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 175-76 (1972):

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual-as well as an unjust-way of deterring the parent.  Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth . . . .

---

[10]  Even to the extent the Amendment can be found to promote the traditional family, that support is insufficient to survive intermediate scrutiny.

[11]  Unquestionably, other aspects of the adoption process may address these issues. However, here the Court is only concerned with the Amendment's ability to promote a "traditional" family.

(footnotes omitted).  Accordingly, the Court finds that to the extent the Amendment operates to strip from the Plaintiff children a parent obtained as a result of lawful adoption, it fails to survive an Equal Protection Clause analysis as it is not substantially related to an important governmental objective.

### 2.    Adult Plaintiffs

Although, as noted above, the Amendment does not, on its face, base its effect on the sexual orientation of the parents, the impact of the Amendment likely has a disparate impact on homosexual individuals as they are more likely to be same-sex parents seeking recognition of their adoption.  To establish a disparate impact, Plaintiffs must show both a discriminatory impact and a discriminatory purpose.  The Supreme Court's analysis of disparate impact based on gender is illustrative of the proper analysis.

> When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionably adverse, a twofold inquiry is thus appropriate.  The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based.  If the classification itself, . . . is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.  See Arlington Heights v. Metropolitan Housing Dev. Corp., *supra* [429 U.S. 252 (1977)].  In this second inquiry, impact provides an "important starting point," 429 U.S., at 266, 97 S.Ct., at 564, but purposeful discrimination is "the condition that offends the Constitution."  Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554.

See Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 274 (1979).

Here, it is clear the Amendment is facially neutral.  It does not on its face discriminate against any particular protected group or class.  Rather, it bars recognition of an out-of-state adoption where the adoptive parents are of the same sex.  Further, as noted above, the

Amendment does not overtly target homosexual individuals.  However, the impact of the statute will undoubtedly have a greater discriminatory impact on that group than any other.  Thus, the inquiry turns to the second prong, discriminatory purpose.  When determining whether a challenged law has a discriminatory purpose, the <u>Feeney</u> court set out the analysis as follows:

> "Discriminatory purpose," however, implies more than intent as volition or intent as awareness of consequences.  See <u>United Jewish Organizations v. Carey</u>, 430 U.S. 144, 179, 97 S.Ct. 996, 1016, 51 L.Ed.2d 229 (concurring opinion).  It implies that the decisionmaker, in this case a state legislature, selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

<u>Feeney</u>, 442 U.S. at 279 (footnotes omitted).

Here, the Amendment was clearly targeted at preventing recognition of homosexual parents.  Defendants' briefs are replete with arguments demonstrating the Amendment targets homosexuals, and Defendants admit as undisputed Plaintiffs' fact no. 13 which states the Amendment was intended to "protect Oklahoma children from being targeted for adoption by gay couples across the nation and to ensure that children are raised in traditional family environments."  (Dkt. No. 62, p. 3.)  Further, the Amendment was passed in direct response to the Attorney General's opinion which led to the issuance of V.'s birth certificate listing Messrs. Hampel and Swaya as parents.  Clearly, the Amendment was intended by the Oklahoma Legislature to have an adverse impact on an identifiable group.  Plaintiffs have established a prima facie case for a disparate impact claim.  The next step is to determine the level of scrutiny that should be applied.

The Supreme Court has applied different levels of review depending on the nature of the class bringing a disparate impact claim.  Here, the class is based on an individual's sexual orientation.  In <u>Romer v. Evans</u>, 517 U.S. 620 (1996), the Court was faced with a challenge to a Colorado statute repealing all state laws that prohibited discrimination based on sexual orientation.  In measuring the law within the context of the Equal Protection Clause, the Supreme Court applied a rational basis test, that is whether the law bore "a rational relation to some legitimate end."  <u>Id.</u> at 631.  The <u>Romer</u> Court then determined the law could not survive the inquiry because it was not related to a legitimate governmental interest.  <u>Id.</u> at 635.  In reaching this conclusion, the <u>Romer</u> Court noted:  "Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance."  <u>Id.</u> at 633.

Here, the Amendment has the effect of closing access to the government to Plaintiffs.  Because of the Amendment, Plaintiffs cannot obtain the assistance of the state in obtaining legal recognition of established parental rights.  The door to assistance is closed solely because of the adult Plaintiffs' sexual orientation.  Thus, as in <u>Romer</u>, the Amendment violates the Equal Protection Clause and must be set aside.  "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense."  <u>Id.</u> at 633.

The avowed purpose behind the Amendment also requires it be set aside.  As noted above, the Amendment was passed to halt the erosion of the mainstream definition of the family unit and to protect Oklahoma children from being targeted for adoption by gay couples across the nation and to ensure that children are raised in traditional family environments.  That is, the Amendment targets an unpopular group and singles them out for disparate treatment.  As the <u>Romer</u> Court stated:

> A second and related point is that laws of the kind now before us raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare · · · desire to harm a politically unpopular group cannot constitute a *legitimate* governmental interest."

<u>Id.</u> at 634-635 (<u>quoting</u> <u>Dep't of Agriculture v. Moreno</u>, 413 U.S. 528, 534 (1973)).  Thus, to the extent the Amendment has a disparate impact on homosexual individuals seeking recognition of out-of-state adoptions, it violates the Equal Protection Clause of the Constitution and must be set aside.

D.  Due Process

Plaintiffs argue the Amendment violates their substantive Due Process rights because it infringes on their liberty interest in parental and family autonomy and in intimate relationships.  As with the Equal Protection claim, Defendants argue that because there is no fundamental right to adopt, Plaintiffs cannot state a Due Process claim.

Plaintiffs have overstated the reach of the Due Process Clause and Defendants have again misstated the issue before the Court.  Turning to Defendants' argument first, as

explained fully above, this case is not about the right to adopt; the Plaintiff children have already been adopted.  Rather, the case is about whether the Amendment's attempt to erase one parent from the legally-established parent-child relationship can withstand a constitutional challenge.  Likewise, aside from the disparate impact issue noted within the Equal Protection context, the sexual orientation of the parents is immaterial to application of the Amendment.  Thus, Plaintiffs' intimate relationship arguments are inapposite.

The Supreme Court has found that certain rights are so basic and fundamental that the state cannot infringe them without establishing that the restriction is justified by a sufficient purpose and that the means of restriction is necessary to achieve the objective.  The first step in a substantive Due Process analysis is to determine if the plaintiff has identified a fundamental right.  Here, it is clear that a fundamental right is implicated.  The Amendment denies recognition to a judgment that established the adult Plaintiffs as the parents of the Plaintiff children.  In so doing, the Amendment in essence tells one of the adult Plaintiffs "you are no longer the parent of your child."  In this regard, the Amendment clearly infringes on the fundamental right to the care, custody, and rearing of the child.  The Supreme Court has, on numerous occasions, clearly established these parental rights are fundamental.  Troxel v. Granville, 530 U.S. 57, 65-66 (2000):

> The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court.  More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own."  Two years later, in Pierce v. Society

of Sisters, 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in Pierce that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Id., at 535, 45 S.Ct. 571. We returned to the subject in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Id., at 166, 64 S.Ct. 438.

In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s]' to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements' "(citation omitted)); Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); Parham v. J. R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ( "Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); Glucksberg, supra, at 720, 117 S.Ct. 2258 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] ⋯ to direct the education and upbringing of one's children" (citing Meyer and Pierce)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right

of parents to make decisions concerning the care, custody, and control of their children.

Because the effect of the Amendment is to interfere with the parent Plaintiffs' rights to make decisions related to the care, custody, and control of their child(ren), Plaintiffs have established the Amendment infringes on a fundamental right.

Defendants now have the obligation to produce a compelling interest to be served which justifies the infringement. That is, Defendants must establish the Amendment is necessary to achieve the objective. Because Defendants erroneously focus on the issue as the right to adopt, they offer no compelling interest to justify the infringement. However, based on Defendants' arguments within the Equal Protection claim, it appears the interest to be served by the Amendment was (1) to halt the erosion of the mainstream definition of the family unit and (2) to meet the goals set out in the Oklahoma Adoption Code, 10 Okla. Stat. § 7501-1.2, that every child should be placed in a setting that meets the child's best interests. The Court agrees that the statute expresses a compelling state interest. However, there is no basis on which to find that the Amendment in any way supports this interest. As noted above, a court of competent jurisdiction has determined the adoptions are in the Plaintiff children's best interest. The Amendment attempts to undo that determination with no consideration of changed circumstances or any other evidence that indicates the earlier decision was in any way incorrect. As for the intent to protect the mainstream definition of

the family unit, as noted earlier, the Amendment does nothing to promote that goal.[12]

Finally, the Court finds the Supreme Court's statement in Quilloin v. Walcott, 434 U.S. 246,

255 (1978), decisive on the issue.

> We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."

(quoting Smith v. Org. of Foster Families, 431 U.S. at 862-63). Here, the out-of-state

adoption decrees created families and the Amendment attempts to break up those families

with no consideration either for the fitness of the adult Plaintiffs as parents or the best interest

of the Plaintiff children. Rather, the Amendment attempts that break up only because the

Plaintiff adults are of the same sex. Such an act cannot survive under Due Process

jurisprudence.[13]

E.  Right to Travel

Defendants argue that Plaintiffs' right-to-travel clause claim must fail as it is brought

only by the Hampel/Swaya family and they lack standing. Although the Court agrees, for

the reasons set forth above, that the Hampel/Swaya family does not have standing in this

---

[12] The Court notes because there is no evidence the Amendment is necessary to achieve the asserted state interest, it is unnecessary to resolve whether the Amendment provides the least restrictive means for satisfying that goal.

[13] The Court notes that the Amendment's effect of terminating a parent's rights without any process likely would run afoul of procedural due process protections as well. However, that issue has not been raised.

matter, the Court does not read the Plaintiffs' travel clause claim as narrowly as Defendants. Rather, as Plaintiffs assert in their brief, the Doels and the Magro/Finstuen family believe the Amendment impacts their right to travel in that it treats them differently from other Oklahoma residents.

Supreme Court jurisprudence clearly establishes a fundamental right to travel. United States v. Guest, 383 U.S. 745, 757 (1966) ("The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized."). The question then becomes – does the Amendment infringe on this fundamental right?

The Supreme Court has identified separate components which the right to travel protects:

> [1] the right of a citizen of one State to enter and to leave another State, [2] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, [3] for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Saenz v. Roe, 526 U.S. 489, 500 (1999). Plaintiffs argue the Amendment impacts each component. However, because the remaining Plaintiffs are citizens of Oklahoma and there are no ingress or egress arguments made, only the third component is implicated here. Therefore, the decisive issue is whether, as a result of the Amendment, Plaintiffs are treated differently than other Oklahomans. Defendants argue they are not because, under Oklahoma law, same-sex couples are not permitted to adopt and, consequently, Plaintiffs are on the

same footing as all other Oklahoma citizens.  Plaintiffs have offered no evidence countering this assertion.  Thus, Plaintiffs have failed to demonstrate that they are treated differently that other citizens of the state.  Consequently, Plaintiffs' right-to-travel cause claim must fail.

## IV.  CONCLUSION

As set forth more fully herein, Plaintiffs Gregory Hampel and Edmund Swaya and their child V. have failed to demonstrate the existence of an injury in fact caused by the Amendment to 10 Okla.Stat. § 7502-1.4 (A).  Accordingly, they lack standing to proceed in this matter and their claims are dismissed.

Plaintiffs Lucy and Jennifer Doel and their child E., and Plaintiffs Anne Magro and Heather Finstuen and their children S. and K. have demonstrated harm from the Amendment.  By its refusal to recognize and give effect to a valid judgment, from another court of competent jurisdiction, which established their status as parents of their respective children, the Amendment violates the Full Faith and Credit Clause of the United States Constitution, the Equal Protection Clause and substantive due process rights.  However, the Court is not faced with and does not address whether Plaintiffs had the right to adopt in the first instance.  Rather, this opinion only addresses the effect of the Amendment on the previously established parent-child relationship.

Finally, because Plaintiffs have failed to demonstrate that the Amendment treats newcomers to the state differently than longtime residents, Plaintiffs' right-to-travel claim fails.

For these reasons, the Court finds both Plaintiffs' and Defendants' Motions for Summary Judgment (Dkt. Nos. 62 and 63) should be GRANTED in part and DENIED in part as explained above. The claims of Plaintiffs Hampel, Swaya, and their child V are dismissed. The Court finds that the Amendment to 10 Okla.Stat. § 7502-1.4 (A), violates the United States Constitution, that it must be set aside, and any further enforcement of it is enjoined. Finally, the Court directs Defendant Crutcher and the Oklahoma Department of Health to issue a birth certificate for E., identifying Jennifer and Lucy Doel as her parents, and to issue birth certificates for S. and K., identifying Anne Magro and Heather Finstuen as their parents.

IT IS SO ORDERED this 19th day of May, 2005.


ROBIN J. CAUTHRON
United States District Judge